DEPARTMENT OF PUBLIC UTILITIES vs. EASTERN MASSA-
CHUSETTS STREET RAILWAY COMPANY.

Suffolk.   April 2, 3, 1951. — June 1, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Public Utilities. Carrier, Motor bus.*

A common carrier of passengers by motor bus operating a number of
separately licensed and certificated routes in various municipalities
did not have the absolute right to discontinue operation of one of its
routes solely on its own authority, even though it complied with the
requirements of G. L. (Ter. Ed.) c. 161, § 111, as to notice to the public
of the discontinuance; and the department of public utilities had juris-
diction under c. 159, § 16, to order it to resume operation of such
route.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Suffolk on November 16, 1949.

The suit was reserved and reported, without decision, by
*Counihan, J.*

*D. H. Stuart,* Assistant Attorney General, (*F. J. Roche,*
Assistant Attorney General, with him,) for the plaintiff.

*C. W. Mulcahy,* (*P. H. R. Cahill* with him,) for the de-
fendant.

WILKINS, J.   By this bill in equity the department of
public utilities seeks enforcement of an order of the depart-
ment requiring the defendant, a common carrier, to resume
operation of motor vehicles for the carriage of passengers
for hire between Taunton and Norton.   G. L. (Ter. Ed.)
c. 25, § 5.   The case is reserved and reported without de-
cision upon the bill of complaint, the answer, and a state-
ment of agreed facts.   G. L. (Ter. Ed.) c. 211, § 6; c. 231,
§ 111.

On May 22, 1928, the adjacent municipalities of Taunton
and Norton granted to the defendant licenses to operate
motor vehicles for the carriage of passengers for hire over

designated streets, and on July 5, 1928, the department issued a certificate of necessity and convenience. See G. L. (Ter. Ed.) c. 159A, §§ 1, 7. *Springfield* v. *Springfield Street Railway, ante,* 4. The defendant ran buses under such licenses and certificate from about September 24, 1928, through September 18, 1949, "at which time it wholly discontinued such operation," after giving notice to the public of the proposed discontinuance under G. L. (Ter. Ed.) c. 161, § 111.

For some time before September 18, 1949, the defendant had numerous conferences with the department relative to such discontinuance, and the department, acting under G. L. (Ter. Ed.) c. 159A, § 5, issued a temporary license to another common carrier for the same route. The second carrier operated until November 17, 1949, when it became unable to continue because of failure to obtain the municipal licenses required under G. L. (Ter. Ed.) c. 159A, § 1, as appearing in St. 1949, c. 297, § 11. On November 10, 1949, the department ordered the defendant to resume operation beginning November 18, 1949. The defendant's contention is that operation under this particular certificate had been entirely abandoned, and that the department lacks authority to order resumption.

The defendant was incorporated under Spec. St. 1918, c. 188. *Eastern Massachusetts Street Railway* v. *Trustees of Eastern Massachusetts Street Railway,* 254 Mass. 28. The period of public control therein provided, after four extensions, has expired. St. 1928, c. 298. St. 1933, c. 108. St. 1938, c. 173. St. 1943, c. 98.[1] In the last statute accepted by the stockholders of the defendant there appears the provision: "After the expiration of the five year period of management and operation by trustees as herein provided the company shall have all the powers and privileges and be subject to all the liabilities and restrictions of a street railway company organized under general laws now or hereafter in force . . .." St. 1943, c. 98, § 11. This

---

[1] The stockholders did not accept the provisions of St. 1948, c. 558.

provision is substantially similar to one applicable to all common carriers of passengers by motor vehicle to be found in G. L. (Ter. Ed.) c. 159A, § 10, reading: "Any person engaged in the operation of motor vehicles under a license and certificate as provided in this chapter is hereby declared to be a common carrier. The department shall have general supervision and regulation of, and jurisdiction and control over such common carriers to the same extent as it has over railway companies . . . ."

General Laws (Ter. Ed.) c. 159, § 12, reads: "The department shall, so far as may be necessary for the purpose of carrying out the provisions of law relative thereto, have general supervision and regulation of, and jurisdiction and control over, the following services . . . and all . . . companies furnishing or rendering any such service or services . . . (b) The carriage of passengers for hire upon motor vehicles as provided in chapter one hundred and fifty-nine A, in section seventy A of chapter one hundred and sixty and in section forty-four of chapter one hundred and sixty-one, but only to the extent therein provided." Section 70A of c. 160 has no present bearing. Section 44 of c. 161,[1] which has been held to apply to the defendant (*Eastern Massachusetts Street Railway* v. *Trustees of Eastern Massachusetts Street Railway*, 254 Mass. 28), adds nothing to the statutes above quoted.

In G. L. (Ter. Ed.) c. 161, § 2, appears the statement: "Street railway companies shall be subject to this chapter and chapter one hundred and fifty-nine." In G. L. (Ter. Ed.) c. 159, § 16, it is provided: "If the department is of opinion, after a hearing had upon its own motion or upon complaint, that the regulations, practices, equipment, appliances or service of any common carrier are unjust, unreasonable, unsafe, improper or inadequate, the department

---

[1] "Any company, with the approval of the department, may acquire, own and operate, for the transportation of passengers or freight, motor vehicles not running upon rails or tracks, but in such operation shall be subject to chapters one hundred and fifty-nine A and one hundred and fifty-nine B, so far as applicable." G. L. (Ter. Ed.) c. 161, § 44, as amended by St. 1934, c. 264, § 4.

shall determine the just, reasonable, safe, adequate and proper regulations and practices thereafter to be in force and to be observed, and the equipment, appliances and service thereafter to be used, and shall fix and prescribe the same by order to be served upon every common carrier to be bound thereby. . . ."

The defendant states in its brief, and it is a matter of common knowledge, that the defendant operates a "large number of separately licensed and certificated routes in various cities and towns in the eastern part of the Commonwealth." It is argued by the defendant without citation of authority that a common carrier of passengers by motor vehicle has an absolute right to retire from the operation of the route specified in any given certificate without respect to any other certificates the carrier may hold. We find ourselves unable to subscribe to this argument. We are of opinion that it is the carrier's system as a whole which is to be considered. So regarded, the defendant has not effected a total abandonment or discontinuance, if there ever can properly be such an act without due authorization, but has attempted, solely upon its own authority, to withdraw from one small part of its territory. Compare *Brownell* v. *Old Colony Railroad*, 164 Mass. 29.

The defendant concedes that to the extent it is operating under any particular license and certificate it is subject to reasonable regulation by the department under G. L. (Ter. Ed.) c. 159, § 16, with respect to the service rendered on the route involved. See *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, 102. From what we have said, this seems to be too restricted a conception of the defendant's rights and obligations, which are to be regarded not piecemeal by the certificate but rather comprehensively according to the entire range of its activities viewed as a whole. We think that § 16 applies to this case. We do not understand that any contention is made that procedure under that section has not been observed.

We express no opinion as to the effect which might be given to G. L. (Ter. Ed.) c. 159, § 12, if the rights of the

parties were dependent solely upon that section. Nor do we rest our decision upon G. L. (Ter. Ed.) c. 159A, § 7, upon which the department seems solely to rely.

Great stress is placed by the defendant upon *Selectmen of Amesbury* v. *Citizens Electric Street Railway*, 199 Mass. 394. For present purposes it is enough to say that the court, while pointing out that the railway, as a public service company, was subject to legislative control (page 398), did not discover any pertinent enactment. Such an enactment is not lacking in the case at bar. See *Boston, Worcester & New York Street Railway* v. *Commonwealth*, 301 Mass. 283, 288.

The defendant is not aided by its compliance with G. L. (Ter. Ed.) c. 161, § 111.[1] While a duty is thereby imposed upon a street railway company, and so upon the defendant, in the interests of public convenience, to give public notice of the discontinuance of any line, this section is not a source of authority to a company to do the enumerated acts merely by giving the required notice.

The record discloses no reason for the action of the defendant. No question is presented of the operation of this part of the defendant's system at a loss. See *Brownell* v. *Old Colony Railroad*, 164 Mass. 29, and cases collected in 10 A. L. R. (2d) 1121.

A final decree is to be entered ordering the defendant to comply with the order of the department, dated November 10, 1949, that the defendant resume the operation of motor vehicles for the carriage of passengers for hire between Taunton and Norton, under certificate numbered 381, issued on July 5, 1928.

*So ordered.*

---

[1] "All companies shall furnish the public with full information, by notice posted for seven consecutive days prior to the date when the same are to take effect in the cars on the lines affected, of any intended change in the running of cars, or the discontinuance of any line, or any change in the general public service of said companies. . . ."